## WHITESIDES v. WHITESIDES.

1. A devise to one of the sons of A, A having several sons, is void for uncertainty; and where it is to such one of the sons of A as shall perform a condition precedent, as, in this case, to live with testator's mother and sister, and the condition is not performed by any of A's sons, the devise does not take effect.
2. A finding of fact by the Circuit Judge from written testimony reported to him, approved, there being testimony to sustain his finding, and no manifest error being shown.

Before NORTON, J., York, July, 1887.

The Circuit decree in this case was as follows:

John Brown died in 1848, leaving as his heirs at law his widow, Mary Elizabeth Brown, his mother, Margaret Watson, and his sisters, Margaret Whitesides, wife of Thomas, and Polly Whitesides, wife of Robert. He also left of force his last will and testament, wherein he devises, "Secondly, it is my will and desire that my mother and sister, Tirza, should live together on the farm so long as my mother lives and my sister remains unmarried. It is also my will and desire that one of Thomas Whitesides' sons—my brother-in-law's sons—should live on the farm with, and take care of, my mother and sister, and for which care and trouble I will and bequeath to him the said land or farm at mother's death or sister Tirza's removal."

His mother, Margaret, had been twice married. He and his sisters were the issue of the first marriage, and she whom he calls sister Tirza is his maiden sister of the half blood, who, with Jane Carson, constitute the issue of his mother's second marriage. The plaintiff, Rufus G. Whitesides, and the defendants, Thomas Whitesides, Joseph M. Whitesides, and Margaret J. McGill, claim the land, the subject of the devise of this action, as heirs of John Whitesides, a son of Thomas Whitesides. It is not disputed that they are such heirs, but such of the other defendants as have answered, deny that John Whitesides, or any other son of Thomas Whitesides, can take under the devise. Whether he can so take is the question in the case. The facts will sufficiently appear as the discussion progresses.

"A devise to one of the sons of A, he having more than one son, is void for uncertainty, and can never be made good." 1 *Jarm. Wills* (5 Am. Ed., 1880), pp. 661–2, and notes. The devise here is to one of the sons of Thomas Whitesides, and it appears in evidence that Thomas Whitesides had several sons. The devise is therefore void for uncertainty.

Aside from authority, the only possible way to point out the object of the devise would be to read, I devise, &c., to whichever of the sons of Thomas Whitesides, at a certain time, shall have performed certain services to certain persons, and if at that time no one shall have performed such services, then I desire to die intestate as to this property. No son of Thomas Whitesides performed this service, and the uncertainty remains.

Then, again, when a devise appears to have been made in consideration of something to be paid or done by the devisee, then that paying or doing becomes a condition precedent to the vesting of the estate. The devise here is "for which care and trouble I will and bequeath to him the said farm," and further indicates that "the care and trouble" is a condition precedent by fixing *"at mother's death* or sister Tirza's removal" as the time of the giving, that being the time when the "care and trouble" was to end. Do this for me, and when you get it done, you shall have that. 2 *Bl. Com.*, 157.

Plaintiffs construe the will to give testator's mother a life interest in his real estate, and to require that one of Thomas Whitesides' sons should live on the farm with, and take care of, testator's mother, at least during the mother's life, and admit that no one of Thomas Whitesides' sons did this in his own person, but claim that John personally performed the service for eight years and died unmarried; that his brother, William, one of his heirs, performed the service for two years; that Calvin, another brother and heir of John, then performed the service until the death of the mother of testator in 1864; and I find as a fact that such service was performed as claimed, but I do not think that this condition precedent could be performed for John by his heirs. It was a *personal* service which was required; consequently no son of Thomas Whitesides performed the condition precedent, and the devise fails.

But if it were held, as claimed by the defendants, that John should have continued his service to the removal of his aunt, Tirza, which never occurred till her death in 1886, and that performance could be made by his heirs, then I find as matter of fact that such performance was not made, and that she did not waive it; the waiver claimed amounting to no more than the objection of an unfit selection for the purpose. Testator's widow, when approached by the children of Thomas Whitesides with an offer to buy her interest in said land, promptly proffered to convey it to them for nothing; but finally consented to accept the price offered, and accordingly conveyed her own half interest in said land to Rufus G. Whitesides, Thomas Whitesides, Joseph M. Whitesides, and Margaret J. McGill. It follows that a partition must be had, and it is agreed that it ought to be made by a sale and division of the proceeds, and, also, that the heirs of Margaret Whitesides are entitled to 17-24, the heirs of Jane Carson to 2-24, and the heirs of Polly Whitesides to 5-24 thereof. Also, that plaintiff collected for the estate $127.10.

Therefore it is ordered and adjudged: 1. That the devise of the land described in the pleadings herein, as attempted in the will of John Brown, deceased, is void for uncertainty and for failure to perform the condition precedent annexed thereto, &c.

The heirs of John Whitesides appealed on the following exceptions:

1. For that his honor erred in holding that the devise in question, to one of the sons of Thomas Whitesides, is void for uncertainty, in the face of the facts (*a*) that it was to such one of these as should live upon the devised premises with, and take care of, the testator's mother and sister; (*b*) that the said Thomas Whitesides was named as executor; (*c*) that all of his sons were minors; and (*d*) that the eldest, John Whitesides, under the direction and with the consent of the executor, moved upon the place, and faithfully rendered the services required of him by the will.

2. For that his honor erred in holding that by the terms of said devise a condition precedent was created, and not a condition subsequent, and that it was not sufficient either (*a*) that performance did not cease until it was arrested by death, or (*b*) that the younger brothers and heirs of the deceased, during their minority,

faithfully performed the condition in his stead, with the consent and under the direction of the executor.

3. For that his honor erred in not holding that the testator gave the estate in remainder, after the death of Mrs. Watson as life-tenant, to an uncertain person, who became certain, in the person of the deceased, as soon as he commenced performance, in whom the said remainder forthwith vested, subject to its being divested only upon the contingency that during the life-time of Mrs. Watson he should desert his post.

4. For that his honor erred in holding, as matter of fact, that the condition was not performed by the heirs of the deceased, from and after the death of the testator's mother down to the death of his sister, continuously.

*Mr. C. E. Spencer,* for appellant.

*Messrs. Wilson & Wilson,* contra.

March 28, 1888.    The opinion of the court was delivered by

MR. JUSTICE McIVER.    The controversy raised by this appeal arises out of the construction and effect of the following clause in the will of John Brown, deceased : "It is my will and desire that my mother and sister, Tirza, should live together on the farm so long as my mother lives and my sister remains unmarried. It is also my will and desire that one of Thomas Whitesides' sons—my brother-in-law's sons—should live on the farm with, and take care of, my mother and sister, and for which care and trouble I will and bequeath to him the aforesaid land or farm at my mother's death or sister Tirza's removal. I also will and bequeath, after my just debts are paid, that all my movable property remain on the farm for the support of my mother and sister, and then go to Thomas Whitesides' son who has lived and taken care of my mother and sister, after my mother's death, or the removal of my sister Tirza. I also will and bequeath to my sister, Tirza, at her removal, or at my mother's death, a good horse, saddle, and bridle, to be worth eighty dollars, in addition to her support from the farm."

Testator's mother and his sister, Tirza, continued to live on

the land in controversy, designated in the will as "the farm," until their deaths, respectively, the former in 1864 and the latter in 1886.   John Whitesides, one of the sons of testator's brother-in-law, Thomas Whitesides, went on the place to live, and seems to have taken care of the old ladies until 1855, when he died intestate and unmarried.   After this two of the other sons of said Thomas Whitesides, first William, until he moved to Arkansas, and then Calvin, until he went into the army, where he died in 1864, went on the place, and seem to have taken care of testator's mother until her death.   After her death Tirza was left there alone, that is, without any white person, except a Mrs. Berry, who, at the request of Tirza, went to live with her, and after the death of Mrs. Berry she lived there alone until her death in 1886, though there was some testimony that Thomas Whitesides, who was the executor of testator's will, offered to send another son, Joseph, to live with her, which proposition seems to have been declined by Tirza on account of the intemperate habits of Joseph.

The plaintiff, and those of the defendants who are named as appellants, claim this land as heirs at law of John Whitesides, upon the ground that he had performed the condition, as far as it was possible for him to do, and that when further performance was prevented by his death, his heirs continued to comply with the condition until it was waived by Tirza.   This claim is resisted by the other defendants, who, as heirs at law of the testator, insist that the devise was void for uncertainty, or at least the devise, being upon a condition precedent which was never complied with, failed, and the land descended to the heirs of testator as property of which he died intestate.

The Circuit Judge held that a devise to one of the sons of Thomas Whitesides, when he had several sons, was void for uncertainty; and that as no one of the sons of Thomas Whitesides had performed the condition, which alone would remove the uncertainty, the devise failed for uncertainty.   He also held that the condition was precedent, and not having been performed, the estate never vested.   He further held that the condition could not be performed for the benefit of John's estate by his heirs; but even assuming that it could, he found as matter of fact that the

condition was not fully performed by the heirs, and that its further performance, after the death of testator's mother, was not waived by his sister, Tirza. He therefore rendered judgment: "That the devise of the land described in the pleadings, as attempted in the will of John Brown, deceased, is void for uncertainty and for failure to perform the condition precedent annexed thereto." From this judgment the plaintiff, together with such of the defendants as are designated as appellants, appeal upon the several grounds set out in the record, in which each one of the rulings of law and findings of fact by the Circuit Judge is contested.

There can be no doubt that a devise to one of the sons of J. S., he having several sons, would be void for uncertainty. 1 *Jarm. Wills,* *322. So that if this were simply a devise to one of the sons of Thomas Whitesides, with nothing more, there could be no question, as the conceded fact is that Thomas Whitesides had several sons. But it is contended that this uncertainty is removed by the additional words in the devise, which are sufficient to designate which one of the sons the testator intended as the specific object of his bounty. Granting this to be so, and that the testator intended to designate, as the particular object of his bounty, that one of the sons who should comply with the condition prescribed, it would still be necessary, in order to remove the uncertainty, to show such compliance. The fundamental inquiry, then, seems to be as to the fact whether the uncertainty in the object of the devise has been removed by showing a compliance with the prescribed condition. Upon this question of fact the finding of the Circuit Judge is adverse to the appellants, and under our well settled rule will not be interfered with, unless without any testimony to sustain it, or manifest error be shown. We have examined the testimony carefully, and our examination, so far from leading us to the conclusion that the finding is against the manifest weight of the evidence, rather inclines us to adopt the view taken by the Circuit Judge.

This, then, is conclusive of the case, for the only fact which could remove the uncertainty as to the object of the testator's bounty not having been established, the devise must necessarily be regarded as void for uncertainty. It is quite clear, from the

whole tenor of this clause of the will, that the testator's primary object was to secure thereby a proper provision for the support of his mother and sister. He manifestly had no choice among the several sons of Thomas Whitesides, and, therefore, as the best mode of securing the accomplishment of his primary purpose, his bounty was offered to that one of the sons who should carry out his principal object, and as the evidence fails to show that any one of them has done this, the uncertainty as to the secondary object of bounty still remains.

It will be observed that this is not the case of a devise to some *specified* person upon condition in which the question whether the condition is precedent or subsequent is oftentimes difficult to determine ; but it is a case of a devise to an unascertained or uncertain person, where the uncertainty can only be removed by a compliance with the condition prescribed. So that here the condition is necessarily precedent. No one of the sons of Thomas Whitesides can claim under this devise until he has complied with the prescribed condition, for in that way alone has the testator designated which one of the sons was to take.

Under this view the other questions presented by the grounds of appeal cannot arise, and need not, therefore, be considered.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.